Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, March 02, 2007 3:46:00 PM

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | )<br>) |
| MICHELLE DENISE JOHNSTON, | ) Case No 05-6288<br>) |
| Debtor. | ) Chapter 7<br>) |
| | )<br>) |
| MICHELLE DENISE JOHNSTON, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Adv. Proc. No. 06-178<br>) |
| TELECHECK SERVICES, INC. | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

Michelle Denise Johnston (the "Debtor") filed this adversary proceeding against Telecheck Services, Inc. ("Telecheck"), on September 13, 2006, seeking damages for violation of the automatic stay and discharge injunction of the Bankruptcy Code. In addition to the Bankruptcy Code's causes of action, the Debtor asserts ancillary claims under West Virginia State law. More specifically, the Debtor alleges that Telecheck violated W. Va. Code § 46A-2-124(c),[1] by attempting to collect a debt

---

[1] In the Debtor's complaint, the Debtor alleges a violation of W. Va. Code § 46A-2-124(f) – not subsection (c). Subsection (f) prohibits a debt collector from attempting to collect money by threatening to take any action prohibited in the West Virginia Consumer Credit and Protection Act, or other law regulating a debt collector's conduct. In the Debtor's post-hearing brief, however, the Debtor only alleges a violation of subsection (c). For purposes of this Memorandum Opinion, this difference is not material.

   The Debtor's complaint also alleges a violation of § 46A-2-128(e), which prohibits a debt collector from contacting a debtor when that debtor is represented by an attorney. At the default

using false accusations. The false accusation was that the Debtor had willfully refused to pay a just debt after that debt had been discharged. The Debtor also alleges that Telecheck violated § 46A-2-127(d), for using a false representation concerning the extent or the amount of a claim against her when the underlying claim had been discharged.

Telecheck failed to file an answer to the Debtor's adversary complaint. On October 27, 2006, the Clerk of the Bankruptcy Court made an entry of default, and the Debtor's motion for default was set for hearing on February 9, 2007. At that time, the Debtor introduced evidence on damages pursuant to 11 U.S.C. § 362(k)$^2$ and 524(a), as well as statutory damages based on the Debtor's State law claims under the West Virginia Consumer Credit and Protection Act. The court took the case under advisement to determine whether the court could award damages under West Virginia law in addition to those damages available under the Bankruptcy Code, or whether the State law causes of action asserted by the Debtor were preempted by the remedies provided in the Bankruptcy Code.

For the reasons stated herein, the court will deny any recovery based on alleged violations of West Virginia law that seek to remedy the same wrong that forms the basis for the Debtor's automatic stay and discharge injunction causes of action, deny the Debtor's cause of action for violation of the automatic stay, and award the Debtor compensation for losses suffered as a result of Telecheck's violation of the discharge injunction.

## I. BACKGROUND

As alleged by the Debtor, Telecheck processes checks for a large number of retail merchants. When a customer writes a bad check, Telecheck guarantees payment to the retail merchant, and pursues the customer for collection. Until Telecheck collects on the amount owed, no participating retail merchant will accept a personal check from that customer.

---

judgment hearing, the Debtor voluntarily abandoned her § 44A-2-128(e) cause of action.

$^2$ The Debtor's Chapter 7 case was filed before the effective date of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). As part of BAPCPA's revisions to the Bankruptcy Code, the former subsection governing damages for violating the automatic stay, 11 U.S.C. § 362(h), was amended and newly designated as § 362(k). None of the amendments to the former statutory language of § 362(h) are applicable in this case, and for ease of reference, the court will cite to § 362(k) as being the applicable subsection in this Memorandum Opinion.

-2-

Before she filed for bankruptcy on October 14, 2005, the Debtor had written a bad check to one of Telecheck's participating retail merchants. Telecheck was listed by the Debtor as an unsecured creditor on Schedule F in the amount of $48.49. Notice of the Debtor's bankruptcy filing was mailed to Telecheck on October 20, 2005. The Debtor received her Chapter 7 discharge on January 25, 2006, and a copy of that discharge order was mailed to Telecheck on January 26, 2006. After entry of her discharge, the Debtor attempted on two separate occasions to write a check to one of Telecheck's participating retail merchants. Both times the participating retail merchant refused to accept her check because Telecheck had failed to cease its collection efforts after it received notice of the Debtor's bankruptcy filing.

## II. DISCUSSION

The Debtor asserts that this court can award statutory damages under the West Virginia Consumer Credit and Protection Act, in addition to damages under the Bankruptcy Code for violation of the automatic stay and discharge injunction, because the remedies provided by State and federal law are not mutually exclusive. In support of her argument, the Debtor relies on the following cases: *Universal Bank, N.A. v. Machnic (In re Machnic)*, 271 B.R. 789, 719 (Bankr. S.D.W. Va. 2002); *In re Prescott*, No. 01-30273 (Bankr. N.D.W. Va. Aug. 23, 2001); *Sturm v. Providian Nat'l Bank*, 242 B.R. 599 (S.D.W. Va. 1999). These cases, however, do not support the Debtor's contention.

In *Machnic*, 271 B.R. at 719, the creditor had filed a complaint against the debtor to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), arguing that, in opening a credit card account, the debtor had misrepresented his intent and ability to repay. In turn, the debtor filed a counterclaim arguing that the creditor's demand for attorney's fees and costs as part of the adversary proceeding – in addition to the underlying obligation owed by the debtor – constituted a violation of the West Virginia Consumer Credit and Protection Act. *Id.* The debtor never made any allegation against the creditor for a violation of the automatic stay or the discharge injunction, and the court never addresses any preemption issues. Furthermore, it appears that the collection costs sought to be recovered by the creditor were solely related to the prosecution of the exception to discharge action.

In *Sturm*, 242 B.R. at 600, Providian Bank made 13 collection calls to the debtor after the filing of the bankruptcy petition, and the debtor filed a complaint alleging that the creditor violated

W. Va. Code §§ 46A-2-127 by misrepresenting that a debt was due after the filing of a bankruptcy, and 46A-2-128(e), which regulated creditor contact with debtors that are represented by an attorney. Following the lead of *Sears Roebuck and Co. v. O'Brien*, 178 F.3d 962 (8th Cir. 1999), the court determined that " 'federal bankruptcy law does not preempt [consumer protection law requiring communications with a represented debtor's counsel] because the state law presents no obstacle to the full enjoyment of [a creditor's] federal rights.' " *Sturm*, 242 B.R. at 602 (citing *Sears Roebuck & Co.*, 178 F.3d at 967). The court further determined that the Bankruptcy Code did not explicitly employ preemptive language, and that Providian failed to demonstrate that a creditor's compliance with federal and state law was impossible, or that any meaningful impediment existed to Providian's pursuit of its federal bankruptcy rights by forcing it to deal with the debtor's attorney. *Id.* Noticeably absent from the *Sturm* court's opinion, however, is any discussion of whether the automatic stay or the discharge injunction provided by the Bankruptcy Code preempted the debtor's claim under then § 46A-2-127, which the court presumed to be a reference to subsection (d) of that section, which prohibits "any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding." *Id.* Whether or not that cause of action was preempted by the Bankruptcy Code was not specifically addressed.

In *Prescott*, the court stated that the creditor, who had not appeared to defend the case, had violated the Bankruptcy Code's discharge injunction by making post-petition collection calls. In addition, the creditor had violated W. Va. Code § 46A-2-128(e) by impermissibly contacting the debtor when the debtor was represented by an attorney. The court awarded the debtor damages totaling $29,000 ($1,000 for each of the 29 post-petition telephone calls made by the creditor),but it is unclear from the Order whether the damages were premised on a violation of the discharge injunction, W. Va. Code § 46A-2-128(e), or both.[3] However, even if the Order was awarding damages based solely on § 46A-2-128(e), if the court were to follow the lead of *Sturm*, 242 B.R. at

---

[3] The Order entered contains no analysis concerning preemption issues, and, after the Order was entered the creditor filed a motion to vacate it on the grounds that it was never properly served with the debtor's motion for contempt. The parties later reached an agreed settlement and the case was closed.

-4-

602, it is unlikely that any preemption issues would have been applicable to the case.[4]  Consequently, *Prescott* does not support the Debtor's contention that §§ 46A-2-124(c) or 46A-2-127(d) are not preempted by the Bankruptcy Code.

For the reasons set forth below, the court concludes that the Debtor cannot assert State law causes of action under W. Va. Code §§ 46A-2-124(c) or 46A-2-127(d) in this adversary proceeding because those subsections attempt to govern the same activity regulated by the Bankruptcy Code in prohibiting creditor attempts to collect debts in violation of the automatic stay and discharge injunction.

Article I, Section 8 of the United States Constitution provides that "Congress shall have the Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . ."  The Bankruptcy Code of 1978, as amended, was created under this express Constitutional grant of power to Congress.  As a Congressional enactment, the Bankruptcy Code is "the supreme Law of the Land, . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

Therefore, when a state enacts a statute that affects a party's rights or duties in a bankruptcy proceeding, the question becomes whether the state law is a bankruptcy law that is expressly preempted by Congress's power under the Bankruptcy Clause, or whether the state statute is not a bankruptcy law, but is one that has an impermissible application insofar as it relates to the federal bankruptcy law.  *E.g.*, *Pobreslo v. Boyd*, 287 U.S. 518, 526 (1933) (state ABC law did not conflict with the Bankruptcy Act); *International Shoe v. Pinkus*, 278 U.S. 261, 265 (1929) (holding that "intolerable inconsistencies and confusion would result" if an Arkansas insolvency law was given effect while the National Bankruptcy Act was in force); *Sherwood Partners Inc. v. Lycos Inc.*, 394 F.3d 1198, 1200, 1204 (9th Cir.) (holding that a state preference law was in conflict with the Bankruptcy Code because the law invaded the province of bankruptcy trustees and would operate to preclude an equitable distribution to creditors), *cert. denied*, 126 S. Ct. 397 (2005).  The

---

[4] Because W. Va. Code § 46A-2-128(e) is not a cause of action brought by the Debtor in this adversary proceeding, the court is making no determination here as to whether § 46A-2-128(e) is, or is not, preempted by the remedies Bankruptcy Code.  This very issue is being litigated by the Debtor in another case, *Johnston v. Valley Credit Service, Inc.*, Adv. Proc. No. 06-180.

-5-

commonly stated standards for determining whether a state law, which is not a bankruptcy law, is preempted by the Bankruptcy Code is to ascertain: (1) whether the state law is expressly preempted by Congress; (2) whether Congress intended to occupy the entire field so as to preempt state laws that might be applicable in that area; (3) whether the state law conflicts with the federal statutes such that the state law cannot be given effect; and (4) whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  *E.g.*, *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) ("[T]he categories of preemption are not 'rigidly distinct.' . . . [T]he entire scheme of the statute must of course be considered . . . ."); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) ("Our primary function is to determine whether, under the circumstances of this particular case, [a state's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."); Susan Raeker-Jordan, *The Pre-Emption Presumption that Never Was: Pre-Emption Doctrine Swallows the Rule*, 40 Ariz. L. Rev. 1379, 1396 (Winter 1998) (stating that even though the test for preemption is stated in various ways, the "'obstruction of purposes' is still the touchstone . . . to the pre-emption question.").

The subsections of the West Virginia Consumer Credit and Protection Act asserted by the Debtor in this case provide:

**Threats or coercion.**

> No debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion or attempt to coerce. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . .
>
> (c) False accusations made to another person, including any credit reporting agency, that a consumer is willfully refusing to pay a just debt, or the threat to so make false accusations . . . .

W. Va. Code § 46A-2-124(c).

**Fraudulent, deceptive or misleading representations.**

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . .

>   (d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding . . . .

§ 46A-2-127(d).

These two State statutes do not seek to regulate bankruptcies – they are enacted pursuant to the West Virginia Consumer Credit and Protection Act, which is applicable to resident consumers that enter into consumer credit sales agreements in West Virginia. § 46A-1-104; *Harless v. First Nat'l Bank*, 246 S.E.2d 270, 275-76 (W. Va. 1980) (concluding that the Act "represents a comprehensive attempt on the part of the Legislature to extend protection to the consumers and persons who obtain credit in this State . . . ."). Accordingly, neither W. Va. Code §§ 46A-2-124(c) nor 46A-2-127(d) is a bankruptcy law, and the State's authority to enact those subsections is not in question. *See*, *e.g.*, Stephen A. Gardbaum, *The Nature of Preemption*, 79 Cornell L. Rev. 767, 771 (1994) ("Preemption . . . means . . . that states are deprived of their power to act at all in a given area . . . .").

As they relate to this case, however, W. Va. Code §§ 46A-2-124(c) and 46A-2-127(d) are similar to the causes of action provided in the Bankruptcy Code. Because the application of State law in this case is being used to imbricate the remedies provided by the Bankruptcy Code, the Debtor's State law causes of action, as applied, are preempted under the Supremacy Clause of the United States Constitution.

### A.    The Automatic Stay

At least three Circuit Courts of Appeals have concluded that any state law cause of action that would allow a debtor to collect damages for a violation of the automatic stay are foreclosed by the remedies provided by § 362(k) of the Bankruptcy Code:

> [S]tate tort claims alleging violations of the automatic stay provision are completely preempted by federal bankruptcy law. This preemption arises because: (1) Congress placed bankruptcy jurisdiction exclusively in the district courts under 28 U.S.C. § 1334(a); (2) Congress created a lengthy, complex and detailed Bankruptcy Code to achieve uniformity; (3) the Constitution grants Congress exclusive power over the bankruptcy law, (4) the Bankruptcy Code establishes several remedies designed to preclude the misuse of the bankruptcy process; and (5) the mere threat of state tort actions could prevent individuals from exercising their rights in bankruptcy, thereby disrupting the bankruptcy process.

*Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2nd Cir. 2001) (discussing *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913-16 (9th Cir. 1996)); *see*

–7–

*also Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 426 (6th Cir. 2000) ("The Pertusos' state law claims presuppose a violation of the Bankruptcy Code. Permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' ") (citation omitted).

As it is applied by the Debtor in this adversary proceeding, W. Va. Code § 46A-2-124(c) attempts to regulate creditor conduct with respect to a debtor after the filing of a bankruptcy petition insofar as it prohibits a creditor from making accusations that the debtor is failing to pay a just debt when collection of that debt has been stayed and is subject to discharge. Similarly, § 46A-2-127(d) attempts to regulate this same type of contact by prohibiting a debt collector from using any false representation concerning the extent or amount of a claim against a debtor when that claim is the subject to discharge in a bankruptcy case. The same set of facts that form the basis for the Debtor's two State law causes of action also form the basis for the Debtor's cause of action under 11 U.S.C. § 362(k).

The court finds the reasoning of the Second, Sixth, and Ninth Circuit Court of Appeals compelling, and holds that, to recover damages for an alleged violation of the automatic stay of the Bankruptcy Code, the Debtor is limited to the private right of action in 11 U.S.C. § 362(k). Accordingly, as they are applied in this adversary proceeding, W. Va. Code §§ 46A-2-124(c) and 46A-2-127(d) are preempted by 11 U.S.C. § 362(k) because Congress intended to occupy the entire field of bankruptcy (only Congress has the power to establish bankruptcy laws); Congress has not expressly allowed individual states to provide remedies for violation of the automatic stay (as, for example, it has allowed states to set their own property exemptions), and the application of various state laws attempting to regulate post-petition collection efforts by a creditor stands as an obstacle to the accomplishment and execution of uniform bankruptcy laws inasmuch as it would obstruct the uniform application of rights and remedies provided by Congress in § 362(k) of the Bankruptcy Code.

### B.    Discharge Injunction

Like stay violation cases, several courts have determined that state law causes of action that would allow a debtor to collect damages for a violation of the discharge injunction are foreclosed by the remedies provided by § 524 of the Bankruptcy Code:

-8-

> [W]e observe[] that: "states may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." The district court correctly noted that the broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code. Other courts that have been faced with a state unjust enrichment claim have held that Congress's intent in enacting the remedial provisions of the Bankruptcy Code leaves "no room for the state cause of action."
>
> In contrast, in *Vahlsing v. Commercial Union Insurance Co.*, a panel of this Court permitted a state law cause of action for violation of the § 362 automatic stay to go forward. However, in that case . . . [t]here was no comparable overlap between a specific remedy available under the Bankruptcy Code and the state law remedies . . . . Therefore, we agree with the district court that the state law cause of action for unjust enrichment is preempted by the Bankruptcy Code.

*Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 447-48 (1st Cir. 2000) (citations omitted); *see also Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) ("[A] suit for violation of section 524(c) can be brought only as a contempt action under section 524(a)(2)."); *Bassett v. Am. Gen Fin., Inc. (In re Bassett)*, 255 B.R. 747, (B.A.P. 9th Cir. 2000) ("We hold that the federal statutory scheme entailed in the Bankruptcy Code is so pervasive with respect to [§ 524(c)] that Congress intended to occupy the filed to the exclusion of state law."); *aff'd in part, reversed in part, remanded by* 285 F.3d 882 (9th Cir. 2002) ("We . . . affirm the BAP's affirmance of the dismissal of Bassett's . . . state law claims . . . ."); *Walls v. Wells Fargo Bank, N.A.*, 255 B.R. 38, 46 (E.D. Cal. 2000) ("[W]ithout proof of defendant's violation of the automatic stay and/or discharge injunction provisions, plaintiff's claims would fail. Accordingly, counts 7 through 10 are preempted by the Bankruptcy Code . . . ."); *aff'd on other grounds* 276 F.3d 502 (9th Cir. 2002).

Moreover, this court does not believe that any private right of action exists for a violation of the Bankruptcy Code's discharge injunction. In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the United States Supreme Court identified the relevant inquiry for determining if Congress created a private right of action in a federal statute:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

–9–

> "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals."

*Id.* at 286-87 (citations omitted).

At least one commentator has argued that such a Congressional intent can be inferred in § 524 based on the following reasoning:

> There are both explicit and implicit indicia of congressional intent to create a private right of action under 524. To begin with, the express language of the Bankruptcy Act of 1978 and the amendments thereto establish Congress's intent to give complete effect to the discharge and eliminate any doubt concerning its effect as a total prohibition on debt collection efforts. In order to accomplish this purpose, Congress designed 524(a)(2) to be a novel and hybrid injunction-like remedy that could be enforced in any bankruptcy court anywhere in the country or in any federal or state court. Congress's intent to create such a novel, hybrid injunctive-like remedy through use of the term "operates as an injunction" instead of the traditional terms of "injunction" or "enjoins" is supported by examining the novel, hybrid injunctive-like remedy for asbestos-related claims and bankruptcies provided for in 524(g) and (h).
>
> That an implied right of action to remedy violations of this injunction exists is supported by the fact that an implied right of action for rescission has been found when any of the six requirements for a valid reaffirmation agreement under 524(c) is lacking. Furthermore, since the proffered analogy between 362 and 524 has been shown to be false, the fact that 362(h) contains an express right of action for actual damages, attorney's fees, and punitive damages whereas 524 contains no express right of action for anything is immaterial.

Robert P. Wasson, Jr., *Remedying Violations of the Discharge Injunction Under Bankruptcy Code 524, Federal Non-Bankruptcy law, and State Law Comports with Congressional Intent, Federalism, and Supreme Court Jurisprudence for Identifying the Existence of an Implied Right of Action*, 20 Bankr. Dev. J. 77, 145-46 (2003).

The court does not believe that this argument is sound, and in fact, it is contrary to existing law. First, the court does not place any special meaning to the language of § 524(a)(2) and (3) that a discharge "operates as an injunction" such that Congress intended to create a "novel, hybrid injunctive-like remedy." In short, if an order operates as an injunction, then it is an injunction. Second, §§ 524(g) and (h) represent special interest legislation concerned solely with asbestos related claims. Those subsections are only applicable to a narrow subset of facts, and were intended to codify the injunction entered by the court in *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2nd Cir.

1988). Because §§ 524(g) and (h) are narrowly tailored to Chapter 11 asbestos bankruptcies, it is inappropriate to transfer meanings ascribed to those special interest injunctions to the general discharge injunction of § 524(a). Third, the court does not believe that any implied right of action for rescission exists when one of the six requirements for a reaffirmation agreement, as listed in § 524(c), is absent. If one of the requirements for executing a reaffirmation agreement is absent, then the agreement is unenforceable ab initio. *See In re Lee*, 356 B.R. 177 (Bankr. N.D.W. Va. 2006) (stating that a reaffirmation agreement must satisfy all six requirements of § 524(c) before it is enforceable; the requirements are not subject to waiver).

Finally, and most importantly, the court rejects the idea that it is immaterial that § 362(k) contains an express private right of action for a violation of the automatic stay and § 524 does not expressly provide for any similar private cause of action. The recognition of a private right of action requires affirmative evidence of Congressional intent in the statute, or in its legislative history. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). No evidence is present in § 524's legislative history to indicate the Congress intended to provide debtors with a private right of action. As stated by the Sixth Circuit Court of Appeals:

> Congress amended the Bankruptcy Code in 1984 to provide an express right of action under the automatic stay provision of 11 U.S.C. § 362(h). It did so because reliance on contempt power to remedy violations of § 362 had been widely criticized. Congress amended § 524 at the same time it amended § 362, but no private right of action was added in § 524. The contrast, we think, is instructive.

*Pertuso*, 233 F.3d at 422; *accord Joubert v. ABN Mortg. Group, Inc. (In re Joubert)*, 411 F.3d 452, 456 (3rd Cir. 2005) (agreeing that § 524 does not create a private right of action); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 508 (9th Cir. 2001) ("[N]othing in [§ 524's legislative history] manifests any intent to create a private right of action; indeed, nothing in it gives any indication that these concerns are not adequately addressed through the contempt remedy that Congress expressly provided."); *Cox*, 239 F.3d at 917 (7th Cir. 2001) ("[A] suit for violation of section 524(c) can be brought only as a contempt action under section 524(a)(2).").

As applied in this adversary proceeding, the Debtor's State law causes of action for a violation of the discharge injunction are preempted by the Bankruptcy Code. The discharge injunction of § 524 prohibits Telecheck from attempting to collect on a debt discharged in a bankruptcy proceeding.

Sections 46A-2-124(c) and 46A-2-127(d) of the West Virginia Consumer Credit and Protection Act similarly prohibit a debt collector from attempting to collect a debt that has been discharged in bankruptcy. Indeed, without a determination that Telecheck violated the discharge injunction, neither § 46A-2-124(c) nor § 46A-2-127(d) would provide any remedy for the Debtor. Just as in the court's discussion on whether the remedy provided by the Bankruptcy Code for violation of the automatic stay preempts State law causes of action based on the same alleged wrong, Congress likewise has the exclusive right under the Constitution to establish uniform bankruptcy laws, and precluding various, non-uniform State law causes of action based on the same alleged wrong furthers the Congressional purpose of uniformity, and recognizes Congressional exclusivity in the field of bankruptcies. Moreover, considering that § 524 does not accord the Debtor with a private right of action for a violation of the discharge injunction, it would be improper for the court to recognize one based on State law.

**C.   Damages**

The Debtor alleges in her complaint that Telecheck willfully violated the automatic stay by continuing to list the Debtor as an individual from whom no participating retail merchant was to accept a personal check until such time as the Debtor paid what she owed to Telecheck. The Debtor further alleges that Telecheck violated the discharge injunction by rejecting two checks that the Debtor wrote to Telecheck's participating retail merchants. Had the Debtor paid her pre-petition obligation, then those checks would not have been rejected.

**1.   Violation of the Automatic Stay**

Section 362(k) of the Bankruptcy Code provides that "an individual injured by any wilful violation of a stay provided by his section shall recover actual damages, including costs and attorney's fees, an in appropriate circumstances, may recover punitive damages." The automatic stay of § 362(a) prohibits, inter alia, any act to collect or recover a claim against the debtor that arose before the commencement of the case. Based on the uncontested assertions of the Debtor, and a review of the court record, the court finds that Telecheck received notice of the Debtor's bankruptcy filing. Telecheck's continued reporting of the Debtor as an individual from whom no participating retail merchant was to accept a personal check until such time as the Debtor paid what she owed to Telecheck was a wilful violation of the automatic stay. *E.g.*, *Citizens Bank v. Strumpf (In re*

-12-

*Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994) ("To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."), *rev'd on other grounds*, 516 U.S. 16 (1995).

Before damages may be awarded for a wilful violation of the automatic stay, however, the debtor must be "injured." 11 U.S.C. § 362(k); *Lovett v. Honeywell, Inc. (In re Transportation Systems, International, Inc.)*, 930 F.2d 625, 628 (8th Cir. 1991) ("To recover under section 362[(k)], the party seeking the award must show that he was injured by the violation of the stay and that the violation was willful."). An "injury" is broadly defined as being "a violation of another's legal right, for which the law provides a remedy." *Black's Law Dictionary* 801 (8th ed. 2004). The automatic stay is a legal right afforded to debtors that, in part, protects them from continued collection efforts by their creditors. H.R. Rep. No. 595, 95th Cong., 1st Sess. 174-75 (1977) (stating that "[t]he automatic stay is one of the fundamental debtor protections .... [giving] the debtor a breathing spell from all his creditors .... [stopping] all collection efforts, all harassment, and all foreclosure actions."). Accordingly, "the mere violation of the automatic stay constitutes an injury to the debtor inasmuch as the creditor's violation restricts the debtor's breathing spell and subjects the debtor to continued collection efforts, possibly including harassment and intimidation." *Jackson v. Dan Holiday Furniture, LLC (In re Jackson)*, 309 B.R. 33, 38 (Bankr. W.D. Mo. 2004).

Importantly, with respect to the debtor, the automatic stay is in place from the date of the filing of the petition to the date of discharge. 11 U.S.C. § 362(c)(2)(C) (stating that the automatic stay "continues until the earliest of . . . (C) if the case is a case under chapter 7 of this title concerning an individual . . . the time a discharge is granted or denied); *Henneghan v. Columbia Gas of Va., Inc. (In re Henneghan)*, No. 05-1220, 2005 Bankr. LEXIS 1770 at *12 (Bankr. E.D. Va. June 22, 2005) ("The automatic stay expires (except as to property of the estate) when the debtor is granted or denied a discharge.").

Here, the Debtor filed her Chapter 7 petition on October 14, 2005 and was awarded a discharge on January 25, 2006. The Debtor never knew that Telecheck was continuing to report her to its participating retail merchants as an individual from whom they were not to accept personal checks until May 2006 – well after the automatic stay had terminated. Accordingly, the Debtor never knew that Telecheck had violated the automatic stay; consequently, because she had no knowledge

-13-

that her rights under the automatic stay had been violated, she never suffered any compensable injury. *E.g.*, *Hass v. Duncan*, No. 1:05cv91, 2005 U.S. Dist. LEXIS 13400 at *10-12 (E.D. Va. July 6, 2005) (affirming the bankruptcy court's decision not to award damages for a creditor's violation of the automatic stay on the basis that the debtor never suffered any damages because the debtor was not aware of the offending action until two weeks after the stay had terminated). Therefore, the court will deny the Debtor any recovery on her claim against Telecheck for its violation of the automatic stay.

### 2. Violation of the Discharge Injunction

The discharge injunction provided by § 524 of the Bankruptcy Code prohibits a creditor from attempting to collect on a debt that has been discharged in a bankruptcy proceeding. The discharge injunction is effective as of the date that a debtor receives a discharge. 11 U.S.C. § 524(a). A violation of the discharge injunction is punished by contempt of court. *E.g.*, *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2005 ("A party who knowingly violates the discharge injunction can be held in contempt . . . ."); *Bessette*, 230 F.3d at 445 ("[A] bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages . . . . Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief . . . when creditors have engaged in conduct that violates § 524."); *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) ("The discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt . . . .").

Determining whether a party may be held liable for civil contempt is a two part inquiry: (1) did the party know of the lawful order of the court, and (2) did the defendant comply with it. *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989); *see also ZiLog, Inc.*, 450 F.3d at 1007 (same); *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (stating that to establish civil contempt, the movant must establish four elements by clear and convincing evidence: " '(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . .. that the decree was in the movant's 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.' ") (citation omitted).

-14-

In this case, Telecheck was mailed a copy of the Debtor's order of discharge on January 26, 2006. Accompanying the order of discharge was an explanation of the effect that the discharge had on Telecheck's pre-petition debt. Notwithstanding the fact that it had notice of the Debtor's discharge, Telecheck caused two checks that the Debtor wrote to its participating retail merchants – one in May 2006 and the other in June 2006 – to be rejected based on the fact that the Debtor owed an unpaid pre-petition debt to it. Accordingly, Telecheck violated the discharge injunction.

In determining what sanctions are appropriate for a creditor's violation of the discharge injunction a court should be mindful that a sanction of civil contempt is not punitive; it is remedial in nature. The purpose of civil contempt is to compensate the complaining party and/or coerce the defendant into complying with orders of the court. *E.g.*, *Walters*, 868 F.2d at 668 (" 'Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. . . . .[I]t matters not with what intent the defendant did the prohibited act.' ") (citation omitted); *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781-82 (8th Cir. 1987) ("The commonly stated distinction is that if the penalty is to compensate the complaining party or to coerce the defendant into complying with the court's orders, the contempt is civil, while if the penalty is punitive, intended to vindicate the authority of the court, then the contempt is criminal."). Civil contempt sanctions to be awarded to successful parties may include: "lost interest, travel time reimbursements for trips necessary to enforce their rights, [and] added attorney's fees caused by the [party's] contempt . . . ." *Walters*, 868 F.2d at 670. The amount of attorney's fees to be awarded is based on a court's discretion, and the amount is generally determined by adjusting the loadstar method – multiplying the number of hours expended by the attorney's hourly rate – upward or downward. *In re Spectee Group, Inc.*, 185 B.R. 146, 160 (Bankr. S.D.N.Y. 1995). Imposing sanctions is a matter of discretion, that is to say it is " 'the responsible exercise of official conscience on all the facts of a particular situation' taking into consideration the purpose of the exercised power." *Wright v. Sargent*, 869 F.2d 1175, 1176 (8th Cir. 1988) (citation omitted).

In this case, the Debtor proffered that she had suffered losses as a result of Telecheck's

violation of the discharge injunction in the amount of $500.[5] The Debtor asserted that this amount was sufficient to compensate her for: (1) her need to contact her attorney, (2) attendance at the court hearing, and (3) the inconvenience of having her two personal checks rejected by Telecheck's participating retail merchants. The court finds that this amount is reasonable based on the totality of the circumstances in this case. The Debtor's attorney also stated that, as a result of Telecheck's violation of the discharge injunction, he was required to expend costs, paralegal's time, and attorney's time to enforce the court's order. The total fees and costs claimed is $2,343.67, representing 2.0 hours of paralegal time, 8.4 hours of attorney's time and $62.67 in costs. The court's review of the time sheets submitted by the Debtor's attorney confirms that the amount of fees and expenses incurred as a result of Telecheck's violation of the discharge injunction is reasonable under the circumstances.

### III. CONCLUSION

For the reasons set forth above, the court will dismiss the Debtor's causes of action pursuant to W. Va. Code §§ 46A-2-124(c) and 46A-2-127(d) because, as applied, those causes of action are preempted by the causes of action and remedies provided by the Bankruptcy Code. The court will also dismiss the Debtor's cause of action for violation of the automatic stay inasmuch as the Debtor failed to demonstrate that she ever knew Telecheck had violated the automatic stay while it was in place, and, consequently, never suffered any injury. The court will also order as a civil contempt sanction that Telecheck pay the Debtor $500 as a result of the losses the Debtor suffered due to its violation of its violation of the discharge injunction, and award the Debtor's attorney $2,343.67 for fees and costs incurred to vindicate the Debtor's order of discharge. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

---

[5] Because Telecheck never appeared in this case, the court did not require any evidence of mitigation. *See, e.g.*, *Pa. State Police v. Suders*, 542 U.S. 129, 152 (2004) ("[T]he plaintiff . . . has the duty to mitigate harm, but the defendant bears the burden to allege and prove that the plaintiff failed in that regard."); *Sherrill White Constr., Inc. v. South Carolina Nat'l Bank*, 713 F.2d 1047, 1050 (4th Cir. 1983) ("The trial court correctly charged that mitigation was an affirmative defense . . . ."); *In re Preston*, 333 B.R. 346, 350 (Bankr. M.D.N.C. 2005) ("A debtor, however, has a duty to mitigate any damages that may occur as a result of a stay violation."); 22 Am. Jur. 2d *Damages* § 698 (2006 ("[F]ailure to mitigate damages has been identified as an affirmative defense which must be pleaded under the federal rules.").

-16-

-17-